# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

ROCHELLE SMITH,
Individually and as Representative
for the ESTATE OF DEMI MAE
GALVIN; KYREN MILLER,
Individually.


      Plaintiffs.                                         Case No.:

v.                                                                Hon. Judge Hala Y. Jarbou

CITY OF NILES; FORMER CHIEF
JAMES R. MILLIN JR., Individually
and in his official capacity;
SOUTHWESTERN MICHIGAN
COMMUNITY AMBULANCE
SERVICE; BRIAN SCRIBNER,
Individually and in his official capacity;
COUNTY OF BERRIEN; DEPUTY
PRESTON HUDDLESTON, Individually
and in his official capacity; OFFICER
SHANE DANIEL, Individually and in
his official capacity; OFFICER NATHAN
J. ADAMCZYK, Individually and in his
official capacity; DREW LAW OFFICE;
SEAN DREW, Individually and in his
official capacity; UNKNOWN and
Yet to be discovered Parties.

Defendants.

---

John R. Beason III, Esq.
The J.R. Beason Firm PLLC.
Attorney for the Plaintiffs
(269) 213-1426
JRBeason3@TheJRBeasonFirm.com

(1)

## **PLAINTIFF'S FIRST AMENDED COMPLAINT AND REQUEST FOR DAMAGES**

Plaintiffs, Rochelle Smith, Kyren Miller, and the Estate of Demi Mae Galvin, comes now, through counsel, and brings this action for violations of the Fourteenth Amendment's equal protection and due process clauses by the Defendants. Defendants the City of Niles, Southwestern Michigan Community Ambulance Service (SMCAS), SMCAS Director Brian Scribner, Former Niles Police Director James R. Millin Jr., Officers Shane Daniel, Nathan Adamcyzk and Attorney Sean Drew, in their individual and official capacities, acted pursuant to the County of Berrien's custom of Fourteenth Amendment equal protection, due process, and civil rights violations when they seized they ignored Kyren Miller's request for help for his sister, refused to offer life saving aid to Demi Mae Galvin, and failed to

arrest the murderers because to use the criminal investigation as an excuse for withholding wrongful death evidence:

(2)

## **INTRODUCTION**

This is a Civil Action asserting claims under the Federal Constitution, the Civil Rights Act of 1964, and U.S. Const. amend. XIV,  42 U.S.C. § 2000d, 42 U.S.C. §1981(c), 42 U.S.C. § 1985, 42 U.S.C. § 1986, 42 U.S.C. §1983, 42 U.S.C. § 12132,  42 U.S.C. § 12202.

(3)

## **JURISDICTION AND VENUE**

This court has jurisdiction over all causes of action set forth in this complaint pursuant to 28 U.S.C § 139, as the plaintiffs and the Defendants reside in the County of Berrien in the State of Michigan. The occurrence of the significant and relevant incidents giving rise to this complaint took place in Niles, MI, County of Berrien, within the jurisdiction of this Court.

(4)

## **THE PARTIES**

Plaintiffs are citizens of the State of Michigan and reside in and around the City of Niles in the County of Berrien.

(5)

Defendants City of Niles, SMCAS, Berrien County, Brian Scribner, James Millin Jr., Nathan J. Adamczyk, Shane Daniel, and Sean Drew are citizens of the State of Michigan with the competency and capacity to sue and be sued.  At the time of the alleged unconstitutional conduct, the Defendants were entities and employees in Niles, MI (Berrien County) and currently retains domicile and residences in the District of Western Michigan.   The Defendant City of Niles, through its police department, is a municipal corporation department operating within the County of Berrien in the Western District of the State of Michigan.

(6)

**<u>FACTS GIVING RISE TO PLAINTIFF'S COMPLAINT</u>**

On the evening of September 20th of 2022, the Plaintiffs, Mr. Kyren Miller and his sister Demi Mae Galvin stopped at a mutual acquaintance's home where her boyfriend, Louis, was visiting a friend.  Demi and Louis spent lots of time together

at Rochelle Smith's home.   Plaintiff Rochelle Smith is the mother of Demi and Kyren.

(7)

Due to their mental health issues, Mrs. Smith and her children are well known to local Niles authorities.   In 2021 or 2022, medical authorities attempted to detain Mr. Kyren Miller in the midst of a mental health episode, causing him to rebel and flee.   Mr. Miller was ultimately pursued by several police officers, tased, and apprehended in downtown Niles, MI.   Rochelle Smith, because of her mental health issues, has had several domestic disturbance incidents responded to by Niles Police.   Mrs. Smith's daughters, including Demi, were cited for truancy, curfew, and other violations.   At the time of Demi's death on September 20th, 2022, the Plaintiffs and their family were considered problem starters by the local police, despite their known mental health issues.

(8)

Around eleven thirty on the evening of September 20th, 2022, at least two shooters began discharging semi-automatic weapons at the occupants in a house near Howard and Eagle streets in Niles, MI.   Kyren Miller was present on the front

porch and Demi Mae Galvin had just walked into the doorway from the living room into the front porch when the shots began.  Kyren and the others on the front porch pushed Demi Mae and a second decedent back into the house as they all ran to get away from the shooters.  In the commotion, one of the shooters shot a fellow accomplice in the neck, causing them to retreat into a car and speed off the community, one of them leaking a trail of blood.

(9)

Kyren Miller was shot in the arm, another resident, KJ, was shot in the eye, Demi's boyfriend Louis, suffered multiple gunshot wounds, a young lady was allegedly shot in the heart, and Demi Mae's injuries are still unknown and not verified because an autopsy was never released to the next of kin.  Unbeknownst to Kyren Miller, Louis was allegedly a suspect and witness in several murders in the Michiana area, specifically South Bend, IN and Niles, MI.

(10)

After retreating into the house, Kyren and Demi were positioned in the living room, adjacent to the dining area where Louis lay riddled with gunshot wounds. KJ was in the bathroom and the second victim was positioned in the kitchen.

6

Kyren Miller called 911 to report the shooting.  The 911 agent talked to Kyren and asked questions while he attempted to help Demi.  Demi was alert and speaking with her brother, prompting him to get off of the phone with 911 to tend to her. With his left arm shattered, Kyren attempted to help Demi as best as he could with one hand, but couldn't move her.  Demi was awake and responsive up until right before first responders entered the home.  Demi was alert and oriented right before emergency responders exclusively came to the aid of Louis.

(11)

First responders from Niles Police Department, followed by Berrien County Sheriffs, and then SMCAS medics arrived and secured the crime scene, but did not offer emergency aid to Demi or the second decedent.  When first responders arrived, Kyren immediately began asking them to tend to Demi because she was just awake.  He asked one EMS responder whether or not they had the "shock things" to resuscitate Demi, to which he replied in the affirmative that they did have the needed equipment, but once in the home, did not check her vitals or attempt to resuscitate her.  Kyren's several requests are recorded on Berrien County Sheriff officer Huddleston or Stanley's body camera footage.  When Kyren directly asked the SMCAS medic to help his sister, the medic, an Asian male, just stared at

him, looked at Demi, and returned to working to assist Louis.  On heavily redacted, muted, and pixelated body camera footage, several officers can be seen standing around one person, while Demi laid off camera dying without assistance.

(12)

At no point did any first responder offer aid to Demi, verify that she was dead, or attempt to resuscitate her.  Kyren's proffered information relating to the real time state of Demi's medical condition, as well as his requests for her assistance were deliberately ignored.  Several officers and responders can be heard at various unmuted points on body camera footage stating that there were two murder victims, but at no point did the first responders check their vitals or attempt to offer life saving aid before declaring them dead.  Demi was still walking and speaking as the responders pulled up.  The mother of the second victim was present in the house during the shooting and the emergency response.  She too asserted that the EMS responders did not check the vitals of the two girl gunshot wound victims nor offer them aid.  The second victim's mother asserted to the Plaintiffs that she was told by first responders that they have to help the ones that are still surviving.  In his Berrien County incident report, Sheriff Deputy Preston Huddleston falsely states that he checked Demi Mae and Yasmeen Scott for a pulse, but did not find one on either.  Plaintiffs assert that Huddleston falsified his incident report to

reflect that victim-decedents were checked for vitals in an act to cover-up the disregard shown to Demi Mae Galvin.

(13)

Kyren Miller, KJ, and Louis were transported to Niles Hospital. Demi and the other victim were left at the crime scene for over nine hours after being declared dead by Medic 1/Spectrum Health's Dr. Kraus.  After calling 911, Kyren texted his mother and told her about the shooting.  Plaintiffs assert that one of the shooters also went to Niles Hospital that same night for a neck injury, got treated and left. The Plaintiffs further assert that the Police are aware of the killer's presence at the hospital the night of the mass shooting and his identity, but have not pursued him or any accomplices.  Mrs. Smith asserts that Niles Police Department has DNA evidence from the shooter's neck wound and the names of six suspects involved in the shooting, but have not pursued them so as to keep the investigation open until the statute of limitations on her claims run out.  By keeping the investigation open, Niles PD is preventing the Plaintiffs from retrieving Demi's autopsy and other records showing her manner of death and SMCAS's denial of services.  Niles Police Department has denied the Plaintiffs the accommodation of true criminal investigation into the mass shooting in an attempt to stemmy any possible litigation she intends to pursue against the City of Niles or its subsidiaries like SMCAS.

(14)

Demi's death certificate purports that she died at 12:28am, September 21st, 2022, but her brother Kyren Miller and other eyewitnesses maintain that she was not checked at that time, nor when first responders first arrived, just as she became unresponsive. Notably, a section on the death certificate  titled "Approximate Interval Between Onset and Death" says from "Secs to Mins" 12:28am is fifty-one minutes after the emergency call came in at 11:37pm.  The Niles Police Incident Report, numbered 22-007740, states that Medic 1, Spectrum Hospital's Dr. Krauss, not SMCAS, came and confirmed the time of death to be "0028hrs."  Demi died while being left unattended because SMCAS first responders were ignoring her brother's demands for her aid.  Kyren Miller has suffered from nightmares, loss of sleep, chronic flashbacks, and emotional anguish related to having his calls for aid ignored by SMCAS, Berrien County Sheriffs, and Niles police.

(15)

Mr. Kyren Miller, with his left arm shattered, still had his right arm functioning, and was contemplating attempting to get Demi to the hospital himself, but responding officers and SMCAS arrived and diverted his attention to seeking their aid with no response in the critical moments of Demi's life.  By the time that he realized they had no intentions of assisting Demi, the scene was secured and no

one was allowed to tamper with the scene or leave without permission from law enforcement.  Kyren Miller, after expecting SMCAS and police officers to assist him, is now haunted by their refusal to act.   Mr. Miller states that the SMCAS agent, an Asian male, looked him in his face after he asked for aid for Demi and explained she was just conscious, looked at Demi, looked back at him, and walked away.  Demi died after SMCAS ignored Kyren Miller and law enforcement officers prevented anyone from moving the victims.

(16)

On September 21st, 2022, Rochelle Miller went to the Niles Police Department to seek assistance, relaying to an officer that she did not feel that her family was safe after the mass shooting.   Demi's murder followed a string of murders in the Michiana area and believed that Demi's boyfriend, who spent time at her home, was the target.  Officer Shane Daniel's responded "that's what happens when you let your kids hang around people like that."  Not even twenty-four hours after her daughter's death, Niles Police officers were rubbing the tragedy in her face. Unbeknownst to her at the time, Rochelle Smith missed a Facebook message from SMCAS's Brian Scribner seeking to help her with Demi's death.   Without an advocate, suffering mental anguish, and haunted by her son's allegations of being ignored when Demi was alive and in need of help, the Plaintiff went to seek

records from SCMAS to clarify what happened, but employees asserted there were no records related to the incident.  Mrs. Smith also reached out to Detective Nathan Adamcyzk persistently for over a year seeking updates about the investigation into the mass shooting, but was ignored for numerous months on end.  As a result, Mrs. Smith filed a FOIA request seeking information related to her daughter's death, but the incident report and body camera footage released to her was heavily redacted and pixelated.   Frustrated with the continued lack of communication and transparency, Rochelle Smith went to see Niles Police Chief Millin, who chided her for seeking the information, stating that she "took away from" his department's resources and time for the mass shooting's investigation by seeking the body camera footage.  She explained and reasoned with him that her daughter did not receive proper medical assistance, to which he retorted, "so now what? You sue and get millions?"  Former Chief Millin further informed Rochelle Smith that Niles Police were "waiting" for the shooters to "slip-up", and "then" they would arrest them, indicating that Niles Police are aware of who the shooters are, but intentionally refraining from arresting them on the evidence in their possession. Plaintiff Mrs. Smith asserts that the Niles Police's indifference to her daughter's murder and the mass shooting investigation is due to Demi being a Black American, her own mental health issues, and animosity between her family and

Niles police, which derived from their past encounters, as evidenced by officer Shane Daniel's and Chief Millin's spiteful and insensitive statements to the Plaintiffs after Demi's tragic death.

(17)

Prior to meeting with Chief Millin, Rochelle Smith engaged the services of Attorney Sean Drew, who consulted with her potential claims, reviewed body camera footage from her FOIA requests with her, and kept the materials for safe keeping.  The Plaintiff asserts that Sean Drew told her that she had a case, but that it could not be pursued until an arrest was made in Demi's open murder investigation.  Mrs. Smith hired Attorney Drew to represent Demi's sister, Dekayla Gavin. When she went back to Mr. Drew for the original FOIA footage, his secretary first said she needed a day to retrieve it, then later said that it was already given to her.  The Plaintiff maintains that Sean Drew kept her FOIA requests disclosures and gave her copies of altered files.  She further asserts that after she asked for the original files, Sean Drew stopped appearing and representing Dekayla Galvin, despite being paid for his services.  The Plaintiff maintains that by telling her she could not pursue claims until an arrest was made and by keeping the original FOIA files, Sean Drew and his firm conspired with Niles PD and SMCAS to prevent this litigation and cover-up their roles in Demi's death.

(18)

By speaking with neighbors around the shooting and other community members, the Plaintiffs learned that Niles PD retrieved DNA samples from the injured shooter, video from ring cameras and hospital footage, a murder weapon, eye-witness testimony, and the names of six individuals involved in the mass shootings.   A few of those individuals are believed to be Niles residents "BJ Murphy", "Tweeze", and "Jason Taylor Jr.", the suspect who was at Niles Hospital speaking with detectives the night of the mass shooting.   Despite being in possession of ample evidence to pursue the killers, no arrest has been made.  Jason Taylor gave contradicting statements about his whereabouts at the time of the shooting, but placed himself in the Niles area at the time of the killing nonetheless. According to ABC 57 News, officers on the crime scene believed Demi and Yasmeen's murders to be related to the killings of Farries Maxwell, killed on August 16th, 2022, and Ra'Quon Glenn, who was murdered on September 8th, 2022.  The Mayor of Niles, MI, Mr. Nick Shelton, made an official statement about the abnormal gun violence and mass shooting, assuring the community that law enforcement has eyewitnesses from each murder and imploring anyone with more information to come forward.  The Plaintiffs assert that more witnesses have come forward and or are known to Niles police, but they are intentionally allowing the

killers of Demi Galvin and Yasmeen Scott to go free to excuse the retention of evidence related to her death, which occurred after SMCAS denied Kyren Miller's calls for her assistance.  In an odd breach of protocol, Niles Police released Demi's phone to Louis, and not her next of kin, in an act of spite towards the Plaintiffs.

(19)

Niles police usually act on victim statements, swiftly investigate, and arrest residents who act out gun violence.  While gun violence in the Niles community is rare, it does occur, and is regularly followed by swift arrests.  In 2021, Johntae Williamson was quickly arrested after shooting someone.  In 2022 they tracked down a truck that was used in the killing of a fourteen year old.  At the beginning of this year, Sawyer Holloway was arrested shortly after shooting a co-worker. The victim, a thirty-four year old white male, had his directions and version of events immediately accepted by first responders.  The Plaintiffs assert that in the murders of Demi Galvin and Yasmeen Scott, Niles police have more than enough knowledge and evidence to arrest suspects and initiate viable criminal charges.  In the South Bend tribune, Niles police Captain Michael Dawson stated: "Some of the people involved are gang members, we're very well aware of that. But we do not believe this initially was a gang-related thing. It's more just bad blood between families or friends or people who don't like each other," Dawson said.  The article

went on to detail that "Dawson is confident detectives will be able to glean forensic evidence from the most recent shooting where dozens of rounds were fired, thanks to the help of the Michigan State Police crime lab. Ballistic evidence and a large number of tips have police confident they can solve the case." Captain Dawson said "We have a lot more tips coming in now, and I believe it's because people are upset that these two young girls were killed."   The Niles police force has lots of information about the characters behind the gun violence that took Demi's life, but have not pursued any of the known perpetrators in close to two years.   Plaintiffs assert that this failure to arrest suspects and conclude their investigation is an overt act in the continuance of a conspiracy against them.

(20)

On January 12th, 2023, Brian Scribnr from SMCAS contacted Plaintiff Rochelle Smith via Facebook messenger, but she did not see the message until February 21st, 2024.    Defendant Scribner's message read: "Hi Rochelle, I am a representative of SMCAS Ambulance. I would like to provide you with assistance regarding your daughter's death. Please call my cell phone directly at **********."   Unaware of the message, Rochelle Smith went to SMCAS in March of 2023, but was told that there were no records in existence related to her daughter's death.   About a year later, when she finally saw Defendant Scribner's

message by checking the "message requests" folder where messages from strangers divert, she implored him for the assistance he initially offered, but Mr. Scribner now claimed to not know anything or to be able to assist her.  By contacting her directly and offering regarding her daughter's death, Mr. Scribner violated his company's policies, confirmed Rochelle Smith's suspicions, and crushed her hopes shortly after by claiming to not remember anything or to be of any assistance in regards to records for his EMT's response to her children's emergency.   The Plaintiffs assert that the City of Niles, as part owners of SMCAS, coerced Brian Scribner into participating in their conspiracy to cover-up Demi's death and into retracting his intentions to help her immediate family get answers.

(21)

Prior to her death, Demi had been questioned by local law enforcement as they believed she had knowledge about recent shootings in Niles, MI and South Bend, IN, but was uncooperative and feared being labeled a snitch.  Plaintiffs assert that the City of Niles and Niles Police Department retaliated by refusing to offer emergency medical services and a true investigation into her death.

(22)

**SPECIFIC ACTS BY EACH DEFENDANT**

Plaintiffs reallege paragraphs  1- 21

(23)

The City of Niles acted pursuant to Berrien County's custom of public official abuses when its police officers and officials intentionally allowed dangerous murders to remain free, despite witness testimony and forensic evidence of their crimes, in order to retain and suppress documentation of their first responders' and SMCAS' role in Demi Mae Galvin's death. The City of Niles, through its public officials and police officers, intentionally, and as an act of retaliation, denied the Plaintiffs the police services of investigating and initiating criminal charges in the mass shooting that took Demi Mae Galvin's life. The City of Niles, through its police officers and police chief, acted out of racial animus and disability bias when they ignored Kyren Miller's requests to aid Demi Mae Galvin, and disrespectfully refused Rochelle Smith's request for updates and action on the mass shooting's investigation. Despite Rochelle Smith's attempts to establish open communication and receive updates about the investigation, Niles Police released  Demi's phone to her boyfriend Louis, and not to her next of kin, in an act of retaliation for her FOIA request and another attempt to keep evidence away from the Plaintiffs.

(24)

SMCAS failed to adequately train, supervise, and retain records on the field activities of their EMT's.  SMCAS' inadequate training and supervision

contributed to the death of Demi Mae Galvin and the trauma of Kyren Miller, Rochelle Smith, and the rest of the decedent's estate.  SMCAS sought to avoid accountability for its fatal errors by relaying to the Plaintiff that they did not have any field records, reports, or debriefings on Demi's death in their possession. SMCAS was either being dishonest and covering-up their role in Demi's death, or in violation of their own policies and professional norms.  SMCAS prevented the Brian Scribner from assisting the Plaintiff or informing her about the true circumstances surrounding her daughter's death, causing emotional trauma and anguish to the Plaintiffs.

(25)

Berrien County, through its public officials, established and acquiesced to customs of racial animus, retaliation, and abuse of official powers, when several elected, appointed, and hired officials collaborated in the cover-up of the murder of Eric McGinnis in the 1990s, participated in planting drugs on residents in the early 2000s, and were found to be disproportionately seizing minority residents recently. Berrien County sheriff first responders ignored Kyren Miller's request to aid Demi Mae Galvin after preventing him from attempting to transport himself by arriving, securing the scene, and directing the victims.  Officer Preston Hubbard, after ignoring requests for aid, falsified his incident report to reflect that he checked the

vitals of Demi Mae Galvin and Yasmeen Scott, contrary to several eyewitness statements.

(26)

Brian Scribner, without being contacted by the Plaintiff, reached out to her to "help" her with her daughter's death.  Mr Scribner's message request, discovered a year later, indicated to the Plaintiffs that he and SMCAS were aware of something peculiar involving circumstances of Demi's death.  But when the Plaintiff replied to Mr. Scribner though, seeking the help he offered and more information about the circumstances surrounding Demi's death, Brian Scribner perfidiously denied remembering the mass shooting or knowing anything that would have made him reach out to the Plaintiff, further causing mental anguish and emotional trauma to the Plaintiffs.

(27)

Jim Millin Jr. chided the grieving mother Rochelle Smith for filing a FOIA request for records and information related to her daughter's death by claiming that the requests took time away from their investigation.  Former police chief Millin then informed the Plaintiff that Niles Police were "waiting" for the shooters to "slip-up", then they were going to arrest them.  Jim Millin Jr. directed Nathan Adamczyk and other detectives to ignore the Plaintiffs request for updates on the

mass shooting investigation and to refrain from closing the probe and initiating charges against the suspects in order to exhaust the statute of limitations on her claims and to suppress evidence of Demi Mae Galvin dying while being ignored by first responders.

(28)

Officer Shane Daniel exhibited and acted out the Niles Police Department's racial animus and angst towards the Plaintiffs, when a day after the mass shooting, he blamed Rochelle Smith for her daughter's death, stating "that's what happens" when you let your kids "hang around those people", insinuating that Demi died because of her association with Black American residents, as opposed to their failure to address gun violence in Niles.  Shane Daniel acted pursuant to Berrien County's customs of bias and racial animus when he antagonized the Plaintiff while being aware of her vulnerable state and mental health issues.

(29)

Nathan J. Adamczyk, acted pursuant to Berrien County's custom of racial animus and public official abuse when he ignored the Plaintiff's request for information on the status the mass shooting investigation.  Nathan J. Adamczyk collaborated with the other defendants to cover-up SMCAS role in Demi Mae Galvin's death

when he abstained from concluding the investigation and submitting the wealth of evidence in his possession to Berrien County prosecutors.

(30)

Sean Drew & Drew Law Offices broke their service contract with Rochelle Smith when he stopped representing her daughter in criminal proceedings in retaliation for her requesting the original versions of FOIA files she left in his possession. Sean Drew collaborated with the City of Niles, SMCAS, and Niles police officers when he informed Rochelle Smith that she could not proceed with litigation against SMCAS and the City of Niles until their investigation into the mass shooting was closed.   Sean Drew attempted to assist the Defendants exhaust the statute of limitations for claims against them by giving erroneous legal advice.

(31)

**COUNT I.  CUSTOMS OF PUBLIC OFFICIAL ABUSE – 14th Amendment, Sec. 1983**

**Defendant – County of Berrien, Jim Millin Jr., Shane Daniel, Nathan Adamczyk, SMCAS, Brian Scribner**

Plaintiffs reallege paragraphs 1-31.  Defendant Berrien County created, instituted, and acquiesced to a custom of its public officials acting out of racial animus and

collaborating in conspiracies to cover-up their rights violations.  Through a lack of adequate grievance mediums residents and or effective methods for holding public officials and agents accountable, the County has created and sustained an environment of persistent constitutional violations and abuses.  But for the Defendant's acquiescence to persistent racial animus and constitutional violations by their public officials, like police officers and Court Judges, these Plaintiffs would not have been injured by their discriminatory treatment.  The County's customs are the moving force, the unwritten laws and licenses that all other Defendants acted pursuant to in violation of these Plaintiffs constitutional and federal rights.

(32)

"The City may be held liable under § 1983 if it maintained a policy or custom that caused the violation of plaintiffs' rights. *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.,*455 F.3d 690, 700 (6th Cir.2006). "One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Id.* (citing *City of Canton v. Harris,*489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). The City can be held liable under plaintiffs' failure-to-train theory if plaintiffs' injuries can be attributed to the City's failure to adequately train Spike *and* this failure amounted to "deliberate indifference" to the rights of members of

the public. *See City of Canton,* 489 U.S. at 388, 109 S.Ct. 1197. Specifically, plaintiffs must show three elements: (1) that Spike's training was inadequate to prepare him for the tasks he was expected to perform; (2) that the inadequacy persisted due to the City's deliberate indifference; and (3) that the inadequacy is closely related to or actually caused plaintiffs' injuries. *Plinton v. County of Summit,* 540 F.3d 459, 464 (6th Cir.2008). *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2013).  Despite being made aware of these issues through studies and resident complaints, the Defendant is liable for inadequate Supervision as to its public officers acting out conspiracies against their constituents.  Police chiefs, judges, prosecutors, and other public officials in Berrien County have regularly acted out of racial animus with no consequences, further emboldening them and creating an environment of brazen constitutional violations

(33)

"In *Plinton,* the court identified two ways of demonstrating the second element, deliberate indifference. First, plaintiffs could show deliberate indifference through evidence of prior instances of unconstitutional conduct demonstrating that the City had notice that the training was deficient and likely to cause injury but ignored it. *Id.* (citing *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir.2005)). Alternatively,

plaintiffs could show deliberate indifference through evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.*Id.”* (citing *Bd. of County Comm'rs of Bryan County v. Brown,*520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2013).  “"‘[d]eliberate indifference’ is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.” ” *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2013).

(34)

The County Defendant, through its acquiescence to public official abuse, caused these Plaintiffs to suffer injuries from an intentional denial of life saving services leading to death, and a refusal to pursue suspects in a conspiracy to cover-up evidence of their EMT's failures.

(35)

## COUNT II.  INTENTIONAL DISCRIMINATION: VIOLATIONS OF TITLES II & VI OF THE 1964 CIVIL RIGHTS ACT “*§ 601 of Title VI, 42 U.S.C. § 2000a, 42 U.S.C. § 2000d, Sec. § 1983*”

**Defendants – City of Niles, Berrien County, SMCAS, Brian Scribner, Jim Millin Jr., Nathan J. Adamczyk, Shane Daniel and Unknown Defendants**

(36)

Plaintiffs, realleges paragraphs 1-35.  The Defendants violated the Plaintiff's rights to unhindered access to federally-funded emergency medical services when they intentionally denied Kyren Miller's request to aid Demi Mae Galvin, refused to act on witness information and forensic evidence, and denied Rochelle Smith police services for her mixed-race children's protection.

(37)

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

(38)

"Section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, prohibits race discrimination in "any program or activity receiving Federal financial assistance." It provides: "No person in the United States shall, on the

ground of race, color, or national origin, be excluded from participation in, be

denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance." § 2000d. Title VI, unlike Title VII,

"prohibits only intentional discrimination." *Alexander v. Sandoval,* 532 U.S. 275,

280, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). *Hotchkiss v. Garno*, 883 F. Supp. 2d

719, 737 (E.D. Mich. 2012).

(39)

The Plaintiffs have been intentionally discriminated against, in part, because they

are Black Americans and associate with Black Americans.

(40)

## COUNT III.  FOURTEENTH AMENDMENT VIOLATION – Equal

## Protection

### Defendants – City of Niles, SMCAS, Berrien County

Plaintiffs, realleges paragraphs 1-39.

(41)

The Defendants violated the Fourteenth Amendment when they ignored Kyren

Miller's request to aid Demi Galvin with the indifference to her death and with the

discriminatory intent of teaching the Plaintiffs a lesson and discouraging them from associating with other Black Americans.

(42)

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law;nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV. "An equal protection violation is established by a demonstration of discriminatory intent and discriminatory effect." *Phifer v. City of Grand Rapids*, 657 F. Supp. 2d 867, 874 (W.D. Mich. 2009).  "In establishing a *prima facie* case under the Equal Protection Clause, Plaintiffs must prove that Defendant *intentionally* discriminated against them." *Thornton v. City of Allegan*, 863 F. Supp. 504, 508 (W.D. Mich. 1993).

(43)

The Defendants violated the Fourteenth Amendment when they ignored Kyren Miller's request to aid Demi Galvin with the indifference to her death and with the discriminatory intent of teaching the Plaintiffs a lesson and discouraging them from associating with other Black Americans.  The Plaintiffs acted with discriminatory

and retaliatory intent when they abstained from closing the mass shooting investigation in retaliation for the Plaintiffs allegations of inadequate emergency medical services and in an attempt to suppress evidence showing the merits of those allegations.

(44)

## COUNT IV.  FOURTEENTH AMENDMENT VIOLATION – Procedural Due Process Violations

**Defendants – City of Niles, SMCAS, Jim Millin, Nathan J. Adamczyk,**

Plaintiffs, realleges paragraphs 1-43.

(45)

The Defendants violated the Fourteenth Amendment procedural due process clause when they secured the crime scene, prevented the victims from executing self-help, and then denied Demi Mae Galvin emergency medical services despite being made aware of her urgent condition and needs by Kyren Miller.

(46)

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person

of life, liberty, or property, without due process of law; nor deny to any person

within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.

(47)

"The Fourteenth Amendment protects an individual from deprivation of life,

liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d

795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due

process violation, a plaintiff must show that one of these interests is at stake.

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due

process claim involves two steps: "[T]he first asks whether there exists a liberty or

property interest which has been interfered with by the State; the second examines

whether the procedures attendant upon that deprivation were constitutionally

sufficient ...." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations

omitted). *Walker v. Jones*, 1:22-cv-938, at *6 (W.D. Mich. Dec. 21, 2022).

(48)

The Defendants violated the procedural due process rights of the Plaintiffs when

they denied Demi Galvin emergency medical services after being informed of her

condition by several urgent pleas from her brother.  The Defendants further

violated the Plaintiffs due process rights when they allowed violent killers to

remain on the streets and await their next crimes before arresting them, despite being in possession of substantial evidence indicating who murdered Demi Galvin and Yasmeen Scott.  The Defendants continue to violate the Plaintiffs due process rights by intentionally stalling and prolonging the mass shooting investigation in order to suppress evidence of SMCAS and other first responders role in Demi Mae Galvin's death.

(49)

**COUNT V. FOURTEENTH AMENDMENT VIOLATIONS – Substantive Due Process**

**Defendants – City of Niles, Jim Millin, SMCAS, Brian Scribner, Nathan Adamczyk, Shane Daniel**

Plaintiffs, realleges paragraphs 1-48

(50)

The Defendants violated the Plaintiffs rights to substantive due process when they denied Demi Mae Galvin emergency medical services leading to her death, and then denied her family a true criminal investigation into her murder to suppress evidence of SMCAS fatal discrimination.

(51)

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.

(52)

""`Substantive due process' analysis must begin with a careful description of the asserted right." <u>Reno v. Flores</u>, 507 U.S. 292, 302 (1993). If the liberty interest asserted may be characterized as "fundamental," then the government may not infringe upon that interest "<u>at all</u>, no matter what process is provided" *Habtegaber v. Jenifer*, 213 F. Supp. 2d 792 (E.D. Mich. 2002). "A fundamental right must be "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (internal quotation marks and citation omitted)." *Grinter v. Knight*, 532 F.3d 567, 573 (6th Cir. 2008).  Demi Mae Galvin and her family have a fundamental interest in life and liberty; to live and be at liberty to enjoy the unabridged benefits of their society, i.e., emergency medical services and policing. Life, liberty, equal access to public services, and equal protection under the law, are all fundamental rights that have been infringed by state actor defendants.

(53)

"Substantive due process, on the other hand, serves the goal of preventing "governmental power from being `used for purposes of oppression,'" regardless of the fairness of the procedures used. See Daniels v. Williams, 474 U.S. 327, 331 (1986) (citation omitted). Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action. For example, it can serve as a check on legislative enactments thought to infringe on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "conscience shocking," hence oppressive, as to rise to the level of a substantive due process violation." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996).

(54)

The Defendants violated the Plaintiffs substantive due process rights when they denied them and the Niles community a true investigation into the mass shooting by waiting for the criminals to "slip-up" in an attempt to suppress evidence of first responder mistakes.  The Defendants violated the Plaintiffs substantive due process

rights when they refused aid to Demi Mae Galvin and denied her next of kin records related to her death.

(55)

## COUNT VI. CONSPIRACY TO VIOLATE CIVIL RIGHTS

### Defendants – City of Niles, Jim Millin, SMCAS, Brian Scribner, Nathan Adamczyk, Shane Daniel, Sean Drew

(56)

Plaintiffs reallege paragraphs 1-54.  The Defendants acted out a conspiracy to violate the civil rights of the Plaintiffs when they refused to perform a genuine criminal investigation and chose to let criminals remain free in order to suppress evidence showing SMCAS's role in Demi Mae Galvin's death.

(57)

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). "The rights protected by this section

are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).  "If two or more persons in any State or Territory conspire…"for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws…if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985 (3).

(58)

"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act." 42 U.S.C. § 1986.

(59)

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah,* 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks,* 771 F.2d 935, 943-944 (6th Cir. 1985). In order to state a claim of civil conspiracy under § 1983, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, violating the plaintiff's constitutional rights, and that an overt act was committed in furtherance of the conspiracy. *Moore,* 890 F.2d at 834; *Hooks,* 771 F.2d at 943-944. *Matthews v. McQuiggin,* No. 2:10-cv-145, at *13 (W.D. Mich. Aug. 29, 2011).   The Defendants shared the single plan and objective of creating a pretextual excuse to retain and suppress evidence of SMCAS roll in Demi Mae Galvin's death.  They took overt acts in furtherance of covering up their fatal denial of emergency services to Demi Galvin when they heavily redacted the mass shooting incident report, FOIA response relating to Demi Mae Galvin, despite the request coming from her next of kin.  The Defendants used the open investigation into the mass shooting as an excuse to retain and redact information exclusively related to Demi Mae Galvin, in violation of the Freedom of Information Act.

(60)

"The elements of a conspiracy claim under 42 U.S.C. § 1985(3) do not merely require that an agreement be made for the purpose of depriving someone's constitutional rights. Rather, the conspiracy must exist for the purpose of depriving a person or class of persons of equal protection of the law. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005)." *Hanas v. Inner City Christian Outreach, Inc.*, 542 F. Supp. 2d 683, 695 (E.D. Mich. 2008).  The Defendants acted out their conspiracy to deprive the Plaintiffs of equal protection under the law when they refused to communicate about the investigation, intentionally refrained from arresting violent killers .

(61)

## COUNT VII. AMERICAN DISABILITY ACT – Discrimination

## Defendants – City of Niles, Jim Millin Jr., Nathan Adamczyk, SMCAS, Brian Scribner

(62)

Plaintiffs reallege paragraphs 1- 60.  The Defendants discriminated against the Plaintiffs when they refused them emergency medical services and denied them an adequate police investigation while being aware of their mental health disabilities.

(63)

"Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in 1 Federal or State court of competent jurisdiction for a violation of this chapter.  In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State." 42 U.S.C. § 12202.

(64)

"An ADA plaintiff must satisfy two requirements to establish a prima facie case of discrimination: (1) that the plaintiff has an impairment; and (2) that the impairment interferes with a major life activity." *Kvintus v. R.L. Polk Co.*, 3 F. Supp. 2d 788, 794 (E.D. Mich. 1998).  "In order to make out a *prima facie* case under title III of the ADA the plaintiff must prove (1) that she has a disability; (2) that defendant's

office is a place of public accommodation; and (3) that she was discriminated against by being refused full and equal enjoyment of medical treatment because of her disability. *Mayberry v. Von Valtier*, 843 F. Supp. 1160, 1164 (E.D. Mich. 1994).

(65)

Plaintiffs Rochelle Smith and Kyren Miller suffer from mental health disabilities known to the Defendants.  Rochelle Smith has had several encounters with Niles Police related to her mental health episodes over the years and her mental health status and struggles are well known to Niles law enforcement.  Kyren Miller ran away from Niles Hospital psychiatric unit, was pursued by several Niles police officers, tased, and apprehended.  Rochelle Smith and Kyren Miller, by virtue of their mental health episodes, had come to be despised by Niles police department.

(66)

The Defendants violated the American Disabilities Act when they denied them emergency medical services, refused assistance with obtaining information about Demi Galvin's death, failed to perform a genuine police investigation into the mass

shooting, and declined to initiate charges against the Demi's killer in order to suppress evidence of SMCAS role in her death.

(67)

## COUNT VIII. WRONGFUL DEATH: Negligent Infliction of Emotional Distress

## Defendants – SMCAS, Unknown Defendants

(68)

The Defendants substantially contributed to the death of Demi Mae Galvin when they denied Kyren Miller's request for aid, forcing him to watch his sister die in front of him.

(69)

"Whenever the death of a person, injuries resulting in death, or death as described in section 2922a shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or death as

described in section 2922a, and although the death was caused under circumstances that constitute a felony." Mich. Comp. Laws § 600.2922.

(70)

""a plaintiff may recover for mental disturbance resulting in physical harm when an immediate family member is injured or exposed to injury by a negligent tortfeasor if the plaintiff is present at the time of the accident or peril or the shock is fairly contemporaneous with it." *Bernier v. Bd. of County Rd. Com'rs for Ionia County*, 581 F. Supp. 71, 78 (W.D. Mich. 1983).

(71)

The Defendants were a substantial cause of Demi Galvin's death because they prevented private aid from Kyren Miller while simultaneously refusing to respond to his request to aid Ms. Galvin.  Demi Mae Galvin died fifty-one minutes after Niles PD received the emergency call and while the Niles Police, Berrien County Sheriffs, and SMCAS were in the home.  Kyren Miller and Demi Galvin drove themselves to the location and had the means to leave.  The Plaintiff called emergency services, waited for their arrival, demanded their assistance for Demi, but when they refused to acknowledge his request, police officers had secured the

scene and would not let the victims leave.  Being unable to transport Demi and incapable of forcing SMCAS agents to respond to his request, Kyren was forced to watch helplessly as his sister died before his eyes.  The unlawfulness of an EMS officer refusing to render aid to a critically injured resident is clear and apparent.

(72)

**COUNT IX. – STATE CREATED DANGER: Prevention of Private Aid**

**Defendants – City of Niles, Berrien County, SMCAS, Unknown Defendants**

(73)

Plaintiffs reallege paragraphs 1-71.

(74)

The Defendants violated the due process, equal protection clauses and created an emergency when they watched SMCAS agents ignore Kyren Miller's request for aid while preventing him from aiding her himself by securing the crime scene and directing the victims to stay there.

(75)

"The Fourteenth Amendment provides that no state can deprive a person of life, liberty, or property without due process. U.S. Const. amend. XIV, § 1. However, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private

actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195

(1989). Generally, "a State's failure to protect an individual against private violence

simply does not constitute a violation of the Due Process Clause." *Id*. at 197. An

exception exists in instances where the State renders a person "more vulnerable to"

the dangers to which he was exposed. *Id*. at 201. This is known as the state-created

danger doctrine, which imposes a duty on the State to protect its citizens from risks

of harm that are caused or greatly increased through its own affirmative acts. *Jones*

*v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006) (citing *Kallstrom v. City of*

*Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). *Nelson-Molnar v. Ann Arbor Pub.*

*Schs.*, No. 23-CV-11810, at *9 (E.D. Mich. May 8, 2024).

(76)

The Defendants significantly increased the vulnerability of the Plaintiffs when they

ignored Kyren Miller's request to aid Demi Mae Galvin while preventing him from

acting and or organizing aid for the decedent.

(77)

**DAMAGES**

Plaintiffs, realleges paragraphs 1-.76

(78)

A "jury may be permitted to assess punitive damages in an action under § 1983 when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally-protected rights of others and such threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness. 42 U.S.C.A. § 1983. Smith v. Wade, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).   The calculation of future damages for types of future damages described in subsection (1)(b) shall be based on the costs and losses during the period of time the plaintiff will sustain those costs and losses. M.C.L. § 600.6305

(79)

**RELIEF REQUESTED**

Plaintiff, realleges paragraphs 1-78

(80)

As a result of the aforementioned legal violations suffered by the Plaintiffs and caused by the Defendants, this Plaintiff family is enduring loss of enjoyment of life and post traumatic stress disorder symptoms manifested in mental anguish, humiliation, outrage, and emotional distress.

(81)

**Wherefore**, the Plaintiff respectfully requests that this Honorable Court enter a Judgment in her favor against Defendants for the following relief:

I.    That $333,333,333.33 be paid in compensatory and exemplary damages to the Plaintiffs to compensate them for the mental and physical anguish, loss of companionship, and the post traumatic stress they will continue to endure;

II.   That $300,000.00 be paid as an award of interest, costs, and reasonable attorney fees;

III.  That equitable relief in the form of an order mandating implicit bias and emergency response training.

IV.   Any other compensatory, exemplary, or equitable relief that this Honorable Court deems appropriate at the commencement of trial.

**THE J.R. BEASON FIRM, PLLC.**
Attorney John R. Beason III
For the Plaintiffs

Dated: September 3, 2024

By: /s/ John R. Beason III, Esq.
The J.R. Beason Firm PLLC.
D.C. Bar No.: 1721583
IBA Bar No.: 1522438
853 McAlister St.
Benton Harbor, MI 49022
(269) 213-1426
JRBeason3@TheJRBeasonFirm.com

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

ROCHELLE SMITH,
Individually and as Representative
for the ESTATE OF DEMI MAE
GALVIN; KYREN MILLER, Individually.


     Plaintiffs.                                 Case No.:

v.                                            Hon. Judge Hala Y. Jarbou

CITY OF NILES; SOUTHWESTERN
MICHIGAN COMMUNITY AMBULANCE
SERVICE; BRIAN SCRIBNER, Individually
and in his official capacity; COUNTY OF
BERRIEN; FORMER CHIEF
JAMES R. MILLIN JR., Individually
and in his official capacity; OFFICER
SHANE DANIEL, Individually and in his
official capacity; OFFICER NATHAN J.
ADAMCZYK, Individually and in his
official capacity; DREW LAW OFFICE;
SEAN DREW, Individually and in his
official capacity; UNKNOWN and
Yet to be discovered Parties.

     Defendants.

_____

## **JURY DEMAND**

To the extent that a jury trial is allowed with regard to any of the issues as set forth above, Plaintiff mercifully demands such.

**THE J.R. BEASON FIRM, PLLC.**
Attorney John R. Beason III
For the Plaintiffs

Dated: September 3, 2024

By:  /s/ John R. Beason III, Esq.
Attorney John R. Beason III
D.C. Bar No.: 1721583
IBA Bar No.: 1522438
853 McAlister St.
Benton Harbor, MI 49022
(269) 213-1426
JRBeason3@TheJRBeasonFirm.com

47